**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| Diana Meynart-Hanzel et al., | No. 17-cv-6308 |
| Plaintiffs. | Judge Harry D. Leinenweber |
| v. | Magistrate Judge Mary M. Rowland |
| Turner Broadcasting System, Inc., et al., | |
| Defendants. | |

<u>**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**</u>

4812-1569-2384

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF
SUBSTANTIAL SIMILARITY .............................................................3

    A.    Courts Within The Seventh Circuit Routinely Dismiss Copyright
Infringement Claims At The Pleading Stage After Comparing The Works ..........3

    B.    A Side-By-Side Comparison Reveals That There Is No Substantial
Similarity Between Any Protectable Elements In Plaintiffs' *B&B* Works
And *The Guest Book* ...........................................................................4

        1.    There is No Similarity in Plot .................................................4

        2.    There is No Similarity in Setting.............................................6

        3.    There is No Similarity in Characters .......................................7

        4.    There is No Similarity in Themes ............................................8

        5.    There is No Similarity in Mood ...............................................9

        6.    There is No Similarity in Pace ................................................9

        7.    There is No Similarity in Dialogue ..........................................9

        8.    There is No Similarity in Sequence of Events ........................10

    C.    Plaintiffs' Effort To Cobble Together A Copyright Claim By Pointing To
Alleged Random, Similarities Scattered Throughout The Various Works Is
Inappropriate And Unavailing ...............................................................10

    D.    Plaintiffs' Argument That "Copying Can Be Inferred Through Access" Is
Contrary To Basic Copyright Law..........................................................12

III.    PLAINTIFFS' ALLEGATIONS OF ACCESS ARE INSUFFICIENT TO STATE
A CLAIM FOR RELIEF ........................................................................13

IV.    CONCLUSION .....................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................13

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
  672 F.2d 607 (7th Cir. 1982) ...............................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 3, 13, 15

*Blakeman v. Walt Disney Co.*,
  613 F.Supp.2d 288 (E.D.N.Y. 2009)....................................................................7

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
  585 F.3d 267 (6th Cir. 2009) .............................................................................10

*Brownmark Films, L.L.C. v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ...............................................................................4

*Dellar v. Samuel Goldwyn*,
  150 F.2d 612 (2d Cir. 1945) ...............................................................................15

*Design Basics, LLC v. Lexington Homes, Inc.*,
  858 F.3d 1093 (7th Cir. 2017) ......................................................................12, 14

*Francescatti v. Germanotta*,
  No. 11 CV 5270, 2014 U.S. Dist. LEXIS 81794 (N.D. Ill. June 17, 2014) ...........12

*Funky Films, Inc. v. Time Warner Entm't Co.*,
  462 F.3d 1072 (9th Cir. 2006) ..........................................................................4, 8

*Gaiman v. McFarlane*,
  360 F.3d 644 (7th Cir. 2004) ...............................................................................7

*Hayes v. Minaj*,
  No. 2:12-cv-07972, 2012 WL 12887393 (C.D. Cal. Dec. 18, 2012).....................14

*Herzog v. Castle Rock Entm't*,
  193 F.3d 1241 (11th Cir. 1999)............................................................................7

*Hobbs v. John*,
  No. 12-cv-3117, 2012 WL 5342321 (N.D. Ill. Oct. 29, 2012) ...............................3

*Incredible Techs., Inc. v. Virtual Techs., Inc.*,
  400 F.3d 1007 (7th Cir. 2005) ........................................................................ 7

*Kelly Tracht, LLC v. Dazzle Up, LLC*,
  No. 17-80434-CIV, 2017 WL 4681329 (S.D. Fla. Oct. 18, 2017) ...................... 14

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir, 1994) .......................................................................... 10

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) .................................................................. 10, 15

*N. Am. Bear Co. v. Carson Pirie Scott & Co.*,
  No. 91 C 4550, 1991 U.S. Dist. LEXIS (N.D. Ill. Nov. 26, 1991) ..................... 13

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ........................................................................ 3, 11

*Peters v. West*,
  776 F.Supp.2d 742 (N.D. Ill. 2001) *aff'd* 692 F.3d 629 (7th Cir. 2012) .......... 10, 12

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) .......................................................................... 4

*Stillman v. Leo Burnett Co.*,
  720 F.Supp. 1353 (N.D. Ill. 1989) ................................................................... 13

*Sweet v. City of Chicago*,
  953 F.Supp. 225 (N.D. Ill. 1996) ..................................................................... 10

*Theotokatos v. Sara Lee Pers. Prods.*,
  971 F.Supp. 332 (N.D. Ill. 1997) ..................................................................... 10

*W. Bend Mut. Ins. Co. v. Schumacher*,
  844 F.3d 670 (7th Cir. 2016) ........................................................................... 13

*Warner Bros. v. Am. Broad. Cos., Inc.*,
  654 F.2d 204 (2d. Cir. 1981) ............................................................................. 8

*Zella v. E.W. Scripps Co.*,
  529 F.Supp.2d 1124 (C.D. Cal. 2007) ............................................................... 4

## Statutes

Fed. R. Evid. 201 ................................................................................................. 4

Fed. R. Civ. P. 11 .............................................................................................. 14

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1

**Other Authorities**

Robert C. Osterberg and Eric C. Osterberg, SUBSTANTIAL SIMILARITY IN
  COPYRIGHT LAW ("OSTERBERG") § 4.4 ................................................................. 7

OSTERBERG § 4:5 .................................................................................................... 8

NIMMER ON COPYRIGHT § 1303[A] ........................................................................... 4

4 NIMMER ON COPYRIGHT § 13.03 (2018) .............................................................. 12

3 William F. Patry, PATRY ON COPYRIGHT § 9:91 (2015) ........................................ 12

I.    **INTRODUCTION**[1]

Plaintiffs' complaint is premised on the fantasy that the works to be compared in this case are somehow similar.  In reality, they are radically dissimilar.  In their Motion, Defendants demonstrated, with direct citations to the parties' respective works, that the works are totally different in terms of protectable expression.  *See* Dkt 32, Defendants' Memo. Of Law In Support of Motion to Dismiss (the "Mot.").  Defendants are not asking the Court to take their word for it. The Court's own independent, side-by-side comparison of the parties' works, whose content is undisputed, leads to the inevitable conclusion that no reasonable juror could find Plaintiffs' *B&B If These Walls Could Talk* works (the "*B&B* Works") and Defendants' *The Guest Book* to be substantially similar.  On this basis alone, this motion should be granted.

To grant the pending motion, the Court need look no further than the works themselves, along with Plaintiffs' concessions and omissions:

- Plaintiffs do not challenge the authenticity of the works to be compared herein, namely, the Plaintiffs' three *B&B If These Walls Could Talk* works (Dkt. 28-1, Exs. 1-3 (the "Sizzle Reel" identified in Plaintiffs' Complaint and certified copies of Plaintiffs' written works)) and Defendants' *The Guest Book* (*id.*, Ex. 4); *see also* Dkt. 39, Plaintiffs' Response to Defendants' Rule 12(b)(6) Motion to Dismiss ("Opp.").

- Plaintiffs concede that the test for substantial similarity is an objective test that focuses on the competing works' plot, themes, dialogue, mood, setting, pace, characters and sequence of events.  *See* Mot. at 16 ¶ 1 & 18-19; *see generally* Opp.

- Plaintiffs acknowledge that the substantial similarity test is "determinative."  Opp. at 3 ¶ 2.

- There is no dispute that, in comparing the works, courts filter out and disregard unprotectable elements, and inquire only whether the protectable elements, standing alone, are substantially similar.  Mot. at 17 ¶ 2 & 19-20; *see generally* Opp.

- Plaintiffs concede that it is a "well-established tenet that common words and phrases are not protected."  Opp. at 4 ¶ 2.

---

[1] Defendants use the same shorthand references herein as used in their opening brief.  (Dkt. 32.)

Against this backdrop, Plaintiffs make five basic arguments:

First, Plaintiffs argue that the Court cannot decide substantial similarity on a motion to dismiss, and "must" give Plaintiffs "the opportunity to gather evidence in support of their claims." Opp. at 10 ¶ 3. Such is not the law. Rather, courts in the Seventh Circuit and across the country routinely dismiss copyright infringement claims at the pleading stage after comparing the works themselves and concluding that no substantial similarity of protectable expression exists between them. Mot. at 16 ¶ 2 & 18 n.8; *see generally* Opp. (not addressing legal authorities). No amount of discovery can change what each of the works are on their face.

Second, citing to their own characterizations of the works as alleged in their complaint, Plaintiffs boldly argue that the works are somehow similar "in concepts, plots, themes, characters, dialogue, mood, pace and scenes." Opp. at 2 ¶ 3. Notably, however, Plaintiffs make no attempt to identify any protectable elements that the works share. There are none.

Third, Plaintiffs undertake to cobble together a claim by pointing to fragments of scenes and snippets plucked from the parties' respective works. Opp. at 6-7. As a matter of law, such scattershot lists of random fragments of scenes cannot support a finding of substantial similarity. Compare Mot. at 29-30 with Opp. (not addressing authorities).

Fourth, Plaintiffs argue that "Copying Can Be Inferred Through Access," and that they have "adequately alleged" substantial similarity "due to Defendants [*sic*] access of Plaintiffs' works." Opp. at 8 (heading no. "2") & 9 ¶ 1. There is no law that stands for such a proposition. Rather, a plaintiff must establish substantial similarity between the respective works even under circumstances where there is massive evidence of access or even actual copying.

Fifth, and finally, Plaintiffs opine that they have sufficiently pleaded access through their allegations that they (1) placed one of their works, the Sizzle Reel, on YouTube and (2) pitched

2

their works to people who have "professional relationships in the television and motion picture industry" who, in turn, might have provided one or more of Plaintiffs' works to an unspecified person somehow affiliated with Defendants. Opp. at 9-10. Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Plaintiffs are required to state a claim for relief that is plausible on its face, supported with *factual allegations* that rise "above the speculative level." Plaintiffs' allegations come nowhere near meeting this standard.

Here, Plaintiffs' inability to show substantial similarity of protectable elements dooms their claim from the outset. Their Complaint also fails for the independent reason that they have not alleged access.

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBSTANTIAL SIMILARITY

### A. Courts Within The Seventh Circuit Routinely Dismiss Copyright Infringement Claims At The Pleading Stage After Comparing The Works

As courts have done for many years, the issue of substantial similarity may be determined as a matter of law on a motion to dismiss simply by reviewing the works. *See* Mot. at 15-16, 18 (listing examples from within the Seventh Circuit and across the country). As one court explained:

> [T]he works themselves supersede and control . . . contrary allegations, conclusions or descriptions of the works contained in the pleadings. . . . When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works.

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotations omitted); *see also Hobbs v. John*, No. 12-cv-3117, 2012 WL 5342321, at *3 n.3 (N.D. Ill. Oct. 29, 2012) ("Because the test for substantial similarity is an objective test, district courts may determine copyright infringement claims at the motion to dismiss stage of litigation").

Here, the Court need look no further than to the works, whose contents are undisputed and demonstrate conclusively that there is no substantial similarity as a matter of law. These works

3

are not going to change and somehow become similar.

**B.** **A Side-By-Side Comparison Reveals That There Is No Substantial Similarity Between Any Protectable Elements In Plaintiffs' *B&B* Works And *The Guest Book***

Plaintiffs' comparison of the respective works ignores the issue of protectability, and likewise ignores that an actual review of Plaintiffs' *B&B* works and *The Guest Book* reveals that they are completely dissimilar in plot, theme, characters, setting, mood, pace, dialogue and sequence of events.[2]

**1.** **There is No Similarity in Plot**.

"'[P]lot' is . . . defined as 'the sequence of events by which the author expresses his theme or idea.'" *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990) (quoting NIMMER ON COPYRIGHT § 1303[A]; *Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1135 (C.D. Cal. 2007) (same).

Here, Plaintiffs do not – and cannot – own the idea of featuring ever-changing guests at a vacation rental property. Mot. at 3 ¶ 3, 20 ¶ 2; *see generally* Opp. Such a general plot idea is not protectable as a matter of law. Mot. at 3, 19-20.[3] Additionally, Plaintiffs do not address the sequences of events of the works, which bear precisely no resemblance to each other.

---

[2] Plaintiffs also do not address the legal authorities set forth in the Defendants' opening brief that dismissal of a copyright claim is appropriate as a matter of law where any similarities between the works are far outweighed by the vast differences between them in plot, characters, mood, and themes. *Compare* Mot. at 18, ¶ 1 (citing authorities) *with* Opp. (not addressing authorities); *see Funky Films, Inc. v. Time Warner Entm't Co.,* 462 F.3d 1072, 1078-81 (9th Cir. 2006) (even where "[a]t first blush, . . . apparent similarities . . . appear significant," there is no substantial similarity where "an actual reading of the two works reveals greater, more significant differences and few real similarities at the levels of plot, characters, themes, mood, pace dialogue or sequence of events").

[3] Moreover, there is no dispute that many entertainment works have featured vacation rental properties and the new guests who rent such properties, from the Inn in *Newhart*, to the hotel of *Fawlty Towers*, to Neal Simon's *Plaza Suite,* and many others. *Compare* Dkt. 29 at 2-8 and Exs. A-K *with* Opp. at 10-11. The existence of these works cannot reasonably be challenged under Federal Rule of Evidence 201 and, in fact, notably absent from Plaintiffs' opposition papers is any argument challenging their existence or accuracy. *See* Opp. at 10-11. Instead, Plaintiffs object to the Court taking judicial notice, citing only *Brownmark Films, L.L.C. v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012). Opp. at 11 ¶ 2. *Brownmark*, however, does not discuss the propriety of judicial notice, and the quoted language Plaintiffs attribute to *Brownmark* does not appear therein.

Instead, Plaintiffs make several ostensibly plot-related arguments, none of which assist their claim. First, Plaintiffs argue that the works somehow share a plot element that "the female guest manages a family and personal conflict specifically involving the theme of 'Problems with the Children,'" and that "[t]he plot is driven by the female guest's struggle with issues of loyalty." Opp. at 7 ¶ 1 (Plaintiffs' citation to their Pilot episode). Such a general plot idea is not protectable as a matter of law. *See* Mot. at 19-20 (citing authorities and examples).

In any event, the actual, expressed plots of the *B&B* works and *The Guest Book* are wildly dissimilar. Mot. at 20-21. For example, Plaintiffs cite to their Pilot episode, which focuses on Lucy, the inn owner, and a couple deciding whether to salvage a failing marriage. *See* Dkt. 28-1 (Brenner Decl.), Ex. 2 at 3; *see also* Opp. at 7 ¶ 1; Story Two of *The Guest Book* focuses on a married couple's scheme to drug and secretly baptize their future daughter-in-law. *See* Dkt. 28-1 (Brenner Decl.), Ex. 4, Story Two at 3:19-3:35, 6:00-7:33. These are not alike by any stretch of the imagination.

Next, Plaintiffs claim the *B&B* works and *The Guest Book* each "portray a scene of a guest character getting 'high' from mistakenly eating pot brownies." Opp. at 7 ¶ 2 (citing Dkt. 1 ¶¶ 36 o-r). No one mistakenly eats pot brownies in *The Guest Book*. Rather, a former porn star intentionally crams pot brownies into her mouth to avoid sharing them with a child, leading to hallucinations featuring a talking mouse who advises her on how to manage her predicament (while she hides in a storage space). Dkt. 28-1 (Brenner Decl.), Ex. 4, Story Four at 8:38-9:28, 10:33-11:54, 15:50-16:13, 18:17-20:00. Nothing remotely similar occurs in Plaintiffs' works.

Finally, Plaintiffs argue that the competing works both involve plots of "sex" and "drugs" including "a story involving, [*sic*] sex , temptation and seduction of a male guest." (Opp. at 7 ¶ 2, citing Dkt. 1 ¶ 36 s.) "Sex," "drugs," temptation" and "seduction" are not protectable plot

elements. Mot. at 3, 20. Looking at the expression of the works themselves is telling. In *The Guest Book*, a guest is secretly videotaped in the VIP room/storage closet of a strip club, where he has an encounter he is not proud of (involving the stripper's feet), leading to a failed attempt to blackmail him by the stripper and her stepson. *See generally* Dkt. 28-1 (Brenner Decl.), Ex. 4, Story One. Nothing remotely similar occurs in any of Plaintiffs' works.

### 2. There is No Similarity in Setting.

Plaintiffs do not dispute that the fact that portions of competing works take place in a rental property is too general to be protectable. *Compare* Mot. at 21-23 *with* Opp. Nor do Plaintiffs dispute that there is no substantial similarity in setting when the settings in the respective works are expressed in different manners. Mot. at 21-23; *see also* Opp.

There can be no reasonable dispute that the settings are dissimilar here. Plaintiffs' work takes place entirely at the "Chateaux La Vie" bed and breakfast, "one of the most beautiful properties on the island" of Martha's Vineyard. Dkt. 28-1 (Brenner Decl.), Ex. 3 at 2. It is "the House of Life." Dkt. 28-1, Ex. 1 at 0:19. *The Guest Book*'s "Froggy Cottage" is a "dusty, rusty or musty" mountain cabin with an old microwave and VCR. Dkt. 28-1 (Brenner Decl.), Ex. 4, Story One. In *The Guest Book*, there is no lovely French-themed inn, no House of Life, no island, no Martha's Vineyard and no bed and breakfast.[4]

Grasping at straws, Plaintiffs contend that *The Guest Book*'s Froggy Cottage "is literally the photographic equivalent of Plaintiffs' hand-drawn picture of" Chateaux La Vie (a white building, with a red roof and people popping out of the windows). Opp. at 6 ¶ 3 (citing Dkt. 1 ¶¶ 36 e.-f.). Except for their general rectangular shapes, the presence of walls, windows, doors and a

---

[4] Nor do Plaintiffs dispute that, whereas every scene in the *B&B* works takes place exclusively inside Chateaux La Vie, Froggy Cottage is just one of many settings in which the episodes of *The Guest Book* take place. *Compare* Mot. at 4, 21 *with* Opp.

roof (all of which are unprotected scènes à faire[5]), the two buildings look nothing alike: Froggy Cottage is a typical brown, wood cabin that looks nothing like Plaintiff's hand-drawn picture. *E.g.*, Dkt. 28-1 (Brenner Decl.), Ex. 4, Story Two at 9:52. Equally important, Froggy Cottage is visually nothing like the Chateaux La Vie as Plaintiffs visually depicted in their Sizzle Reel. *Id.*, Ex. 1 at 0:01-0:06.

### 3. There is No Similarity in Characters.

There is no dispute that copyright law provides very little protection for characters presented in a creative work. Mot. at 23; *see also* Opp. The less developed the characters, the less they can be copyrighted. Only "especially distinctive" characters, such as Mickey Mouse or Superman, receive copyright protection. Mot. at 23. Plaintiffs ignore this law, but they do cite to the Osterbergs' copyright treatise, which itself states: "When a character is a mere stereotype, or merely briefly described," it is not protectable under copyright law. Robert C. Osterberg and Eric C. Osterberg, SUBSTANTIAL SIMILARITY IN COPYRIGHT LAW, § 4.4 ("OSTERBERG") (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1258 (11th Cir. 1999) (law enforcement officers whose fathers were sheriffs is an "uncopyrightable idea") and *Blakeman v. Walt Disney Co.*, 613 F.Supp.2d 288, 308-09 (E.D.N.Y. 2009) (characters of "Reagan Republican-type," "liberal democrat" and "scheming political strategist" are not protectable).)

Against this backdrop, Plaintiffs' cursory character descriptions are not protectable. For example, Plaintiffs argue that both works include an "atheist" (Plaintiffs' work contains a one-

---

[5] *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005) ("scènes à faire . . . are not protectible by copyright") (citing *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982)); *see also Gaiman v. McFarlane*, 360 F.3d 644, 659 (7th Cir. 2004) ("the [scènes à faire] doctrine teaches that a copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another.") (internal quotations omitted; citing, *inter alia*, *Atari*, 672 F.2d at 616-17).

word description of their character, an "atheist") and portray characters with allegedly similar "wardrobe and styling," such as an unspecified character who wears eyeglasses. Opp. at 7 ¶ 2; *see also* Dkt. 28-1 (Brenner Decl.), Ex. 3, Treatment at 5. In light of the foregoing authorities, such alleged cursory similarities are not protectable.

To support their argument, Plaintiffs appear to rely primarily upon their Lucy character, who has no counterpart in *The Guest House*. Lucy, the protagonist of the *B&B* works, is described as "[a] lovely British widow [who] inherits an elegant mansion on picturesque Martha's Vineyard, and converts it into a bed and breakfast," and is a vivacious and spontaneous, "buxom brunette" who "narrates the story . . . as a plot-driving mechanism," creates special activities for her guests such as yoga on the beach, a seductive cooking class, poetic improve and tarot readings, exercises a can-do attitude and successfully improves the lives of her guests. *See* Mot at 3-4, 5, 7, Dkt. 28-1 (Brenner Decl.), Ex. 2 at 1-2, 5, *id.*, Ex. 3 at 2-3; *see generally* Opp. & Opp. at 6 ¶ 3 (citing Dkt. 1 ¶¶ 36 (g.-h.). No such person exists in *The Guest Book*.

### 4.    <u>There is No Similarity in Themes</u>.

Commonplace, general themes are not protectable. *See, e.g.*, *Warner Bros. v. Am. Broad. Cos., Inc.*, 654 F.2d 204, 209 (2d. Cir. 1981) (theme of a hero performing feats of miraculous strength "too common and general a . . . theme to even approach the degree of concreteness and particularity deserving of copyright protection"); *see* OSTERBERG § 4:5 (common themes such as "stresses upon normal conjugal relations," racism, friendship, courage, honor and the effect of war on the human spirit, are not protectable) (citing authorities). Moreover, and particularly pertinent here, there can be no substantial similarity where themes are expressed in different manners. *Funky Films*, 462 F.3d at 1079 (finding no substantial similarity as a matter of law as "[a]lthough both works explore themes of death, relationships, and sex, they do so in very different ways").

Here, Plaintiffs list bare bones, common themes such as a "conflict-of-loyalty" theme, "Problems with the Children" and "themes . . . around 'sex' and 'drugs.'"  Opp. at 7 ¶ 1.  Such "themes" are far too general to be protectable.  In any event, assuming *arguendo* concepts like child problems, loyalty, sex and drugs even qualify as themes (*i.e.*, the overarching message), the works share precisely no similarity of expression.  (*See* Mot. at 27.)  Moreover, it is far from clear what "conflict-of-loyalty" theme Plaintiffs are referring to in the first instance.[6]

### 5. There is No Similarity in Mood.

Plaintiffs do not dispute that the respective moods of the works are dissimilar.  Mot. at 27-28; *see generally* Opp. (not addressing mood).

### 6. There is No Similarity in Pace.

Plaintiffs do not dispute that the pace of the *B&B* works and *The Guest Book* are dissimilar.  Mot. at 28; *see generally* Opp. (not addressing pace).

### 7. There is No Similarity in Dialogue.

Plaintiffs do not dispute that dialogue is an important basis of comparison, and that to support a claim of substantial similarity of dialogue, a plaintiff must demonstrate "extended similarity of dialogue."  *Compare* Mot. at 28 *with* Opp.  There is precisely no similar dialogue here. *Id.* (Plaintiffs make no effort to identify any similar dialogue).

Plaintiffs appear to rely solely upon the common phrase "if these walls could talk," which appears in Plaintiffs' work title and is said by Lucy in the Plaintiff's Sizzle Reel.  *See* Opp. at 2 ¶ 3 (citing Dkt. 1 ¶ 36a.); *see also* Dkt. 28-1 (Brenner Decl.), Ex. 1 at 1:42 (Lucy says "if these walls could talk.").  However, this phrase is never uttered in *The Guest Book*, nor is it part of the show's

---

[6] None of Plaintiffs' works mention "loyalty" or any "conflict-of-loyalty" theme.   Dkt. 28-1 (Brenner Decl.), Exs. 1-3.

title.  Such a common phrase is not protectable in any event.[7]

### 8.    There is No Similarity in Sequence of Events.

Plaintiffs identify no sequence of events that the works share, and do not dispute that the sequence of events in the works are entirely different.  *Compare* Mot. at 28-29 *with* Opp.

### C.    Plaintiffs' Effort To Cobble Together A Copyright Claim By Pointing To Alleged Random, Similarities Scattered Throughout The Various Works Is Inappropriate And Unavailing

A plaintiff may not cobble together a claim by pointing to random similarities scattered throughout the works.  *See* Mot. at 29-30 (citing *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045-46 (9th Cir, 1994) and *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)); *see also Peters v. West*, 776 F.Supp.2d 742, 751 (N.D. Ill. 2001), *aff'd* 692 F.3d 629 (7th Cir. 2012) ("'[R]andom similarities scattered throughout the works are not a proper basis for a finding of substantial similarity.'") (quoting *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 275 (6th Cir. 2009)).

Equally improper is Plaintiffs' reliance on their own characterizations of the works, rather than the actual works themselves.  Opp. at 2 ¶ 3 (Plaintiffs' citation to their own allegations in their Complaint, Dkt. 1 ¶¶ 36a.-w.)  It is well settled that in ruling on a motion to dismiss, "'the works themselves supersede and control any contrary allegations, conclusions or descriptions of the works as contained in the pleadings.'"  Mot. at 14 ¶ 2 (quoting *Theotokatos v. Sara Lee Pers. Prods.*, 971 F.Supp. 332, 340-41 (N.D. Ill. 1997); *Peter F. Gaito Architecture*, 602 F.3d at 64 (same).  Contrary to Plaintiffs' bald assertion (made without citation to any authority), the Court

---

[7] Short phrases and titles are not subject to copyright protection. *Peters*, 692 F.3d at 635 (phrase "what does not kill me, makes me stronger" is a "ubiquit[ous] . . . common saying" and not entitled to copyright protection); *Sweet v. City of Chicago*, 953 F.Supp. 225, 229 (N.D. Ill. 1996) (clichés and common phrases not subject to copyright protection); Opp. at 2 ¶ 3 (Plaintiffs' concession that "titles alone are not copyrightable"); *see also* Dkt 29 (RJN) at 10-12 (beyond reasonable dispute that numerous entertainment works exist which use the phrase "if these walls could talk").

need not accept as true allegations that are contradicted by documents referenced in the complaint. *See* Mot. at 14 ¶ 2; *see also* Opp. at 1 ¶ 3 & 3,¶ 1.

Here, Plaintiffs' list of alleged, random similarities– which is absurd on its face – perfectly illustrates the fundamental flaw of Plaintiffs' entire approach to this case. For example, Plaintiffs contend that in both works, a character wears eyeglasses! Opp. at 7 ¶ 2. And if you freeze frame both works, there is an image where a man looks up at a woman. *Id.* (citing Complaint at ¶ 36s). And Plaintiffs claim that in both works, a female character has a purportedly similar "hairstyle" (*i.e.*, long, brown). Opp. at 7 ¶ 2 (*see also* Dkt 1, photographs of women with long, brown hair). Such random, fleeting and minor commonalities are not the stuff of any substantial similarity analysis within the meaning of the law.

Next, Plaintiffs claim that both works feature characters in an "identical manner: filmed from a back angle while looking into the mirror, checking the eyes." Opp. at 7 ¶ 2 (citing Dkt. 1 ¶¶ 36 o., q.-s.) The image of Plaintiffs' character comes from their Sizzle Reel, in which a middle-aged bald man practices saying the Hebrew phrase "L'Chaim" (apparently in front of a mirror; no mirror is shown in the Sizzle Reel) because he is pretending to be Jewish. Dkt. 28-1 (Brenner Decl.), Ex. 1 at 0:37-0:59. Plaintiffs' Bible and Treatment reveal that this character is Stuart Levine, "[a] middle-aged man who … scores himself a date on J.-date" even though he is lying about being Jewish. *Id.*, Ex. 2 at 4 & Ex. 3 at 3. He does not ingest any pot brownies. *Id.* In *The Guest Book*, a former female porn star stares into a mirror after intentionally shoving way too many pot brownies into her mouth. *Id.*, Ex. 4, Story Four at 8:35-9:28. In no way, shape or form are these characters alike, nor is looking into a mirror protectable expression.

Such random snippets and mischaracterizations are precisely why the Court need not accept Plaintiffs' allegations regarding the content of the works as true. Rather, the Court should

do what courts routinely do in deciding motions to dismiss for lack of substantial similarity: review the works themselves.

### D. Plaintiffs' Argument That "Copying Can Be Inferred Through Access" Is Contrary To Basic Copyright Law

Plaintiffs argue that "Copying Can Be Inferred Through Access," and that they have "adequately alleged" ***substantial similarity*** "due to Defendants [*sic*] access of Plaintiffs' works." Opp. at 8 (heading no. "2") & 9. This is incorrect. It is – quite literally – hornbook law that,

> even massive evidence of access cannot by itself avoid the necessity of also proving the full measure of substantial similarity. . . . [N]o matter how steeped in plaintiff's work defendant may have been, if the resulting product is non-actionable as a matter of law, then the absence of substantial similarity that must underlie every successful claim still dooms the infringement suit.

4 NIMMER ON COPYRIGHT § 13.03 (2018); *see also* 3 William F. Patry, PATRY ON COPYRIGHT § 9:91 (2015) (the determination of whether substantial similarity exists is "made by comparing the two works from the perspective of the ordinary observer. This comparison is completely unaffected by the defendant's degree of access").

As the Seventh Circuit has stated, "access cannot serve as a proxy for substantial similarity." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017). Rather, access and substantial similarity are separate inquiries, and even where access is shown, a plaintiff must "separately prove" substantial similarity. *Peters*, 692 F.3d at 635; *Francescatti v. Germanotta*, No. 11 CV 5270, 2014 U.S. Dist. LEXIS 81794, at *21-22 (N.D. Ill. June 17, 2014) ("The substantial similarity inquiry is independent of the access inquiry. . . . Thus, regardless of the degree of access . . . , the substantial similarity analysis must be conducted independently.")

Moreover, even actual copying is irrelevant where no reasonable person could find any substantial similarity between the subject works. *See v. Durang*, 711 F.2d 141, 142-43 (9th Cir. 1983). Where a defendant has "copied from a plaintiff's work as a factual matter . . . [i]f a

defendant has not copied something protected by copyright laws – specifically, the plaintiff's expression of his ideas – then his copying will not subject him to liability." *Stillman v. Leo Burnett Co.*, 720 F.Supp. 1353, 1357 (N.D. Ill. 1989); accord *N. Am. Bear Co. v. Carson Pirie Scott & Co.*, No. 91 C 4550, 1991 U.S. Dist. LEXIS, at *9 (N.D. Ill. Nov. 26, 1991).

No matter what Plaintiffs may argue or allege about access (or even in fact copying), a review of the works themselves show that the works are not substantially similar in protectable expression. On that basis alone, Plaintiffs' complaint should be dismissed.

## III. PLAINTIFFS' ALLEGATIONS OF ACCESS ARE INSUFFICIENT TO STATE A CLAIM FOR RELIEF

Legal conclusions couched as factual allegations are not sufficient to state a claim. *See Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (mere labels or conclusions or a "formulaic recitation of the elements" of a cause of action insufficient). Rather, "[a]fter *Twombly* and *Iqbal*, a plaintiff seeking to survive a motion to dismiss must plead some facts that suggest a right to relief that is beyond the speculative level" and is "plausible on its face." *Schumacher*, 844 F.3d at 675 (citing authorities; quotations omitted).

Here, Plaintiffs' access allegations are merely legal conclusions and wishful speculation, without providing any actual facts showing how the Defendants would have had a reasonable possibility of viewing *any* of Plaintiffs' three works. First, with respect to the Sizzle Reel (*i.e.*, the only work Plaintiffs allegedly posted in the Internet[8]), posting such a work on YouTube does not constitute widespread dissemination sufficient to claim access as a matter of law. Mot. at 14-15 (citing *Design Basics, Briggs, O'Keefe, Cholvin and Jewel Music Publ'g Co.*); *see also Hayes v.*

---

[8] Plaintiffs allege *only* that their Sizzle Reel was posted on the Internet, and do not allege that their Bible and Treatment ever were so posted. *See* Dkt. 1. As a viewing of the Sizzle Reel confirms, it does not resemble *The Guest Book*. Dkt. 28-1, Exs. 1 & 4.

*Minaj*, No. 2:12-cv-07972, 2012 WL 12887393, at *3 (C.D. Cal. Dec. 18, 2012) ("The fact that the video was placed on YouTube does not imply it was disseminated widely."). In the face of these authorities, Plaintiffs cite *Kelly Tracht, LLC v. Dazzle Up, LLC*, No. 17-80434-CIV, 2017 WL 4681329 (S.D. Fla. Oct. 18, 2017) for the proposition that placing a video on the Internet somehow satisfies the access element at the motion to dismiss stage. Opp. at 10, ¶ 2. However, in *Kelly Tracht*, *LLC*, the district court *expressly* declined to address that issue. *Id.* [9]

Next, Plaintiffs argue that Defendants somehow accessed their works because Plaintiffs "disseminated" their works to unspecified professionals "with whom Defendants are connected." Opp. at 9 ¶ 1 (citing Dkt. 1 ¶¶ 23-35). However, Plaintiffs do not provide even a single factual allegation about how the Defendants are connected to any of the people Plaintiffs identified, or whether Defendants ever heard of any of them. *Id.*[10] Plaintiffs certainly do not allege that Plaintiffs sent their work "directly to" any Defendant or a "close associate of" any Defendant. *See Design Basics*, 858 F.3d at 1099-1100.

Instead, at bottom, Plaintiffs allege – "[o]n information and belief" – that some unspecified person, somehow associated with Defendants, saw or heard about some unspecified version of Plaintiffs' works, albeit in an unspecified way "through … professional relationships in the television and motion picture industry." (Dkt. 1 ¶¶ 25, 27-31, 33-35.) Plaintiffs also attended a "Fade in Magazine Pitch Fest" and "pitched the[ir] idea to about 10 companies," none of which are alleged to be associated with any of the Defendants. (*Id.* ¶ 29.) Under *Twombly*, 550 U.S. at

---

[9] In ruling on the motion to dismiss, the court expressly stated that it was not addressing "whether mere internet presence can satisfy the access element at this stage." *Kelly Tracht, LLC*, 2017 WL 4681329, at *4, n.4. Rather, the court found that the plaintiff sufficiently alleged access where the plaintiff and the defendants sold goods at *the same brick-and-mortar store* and on the same retail website, and that the plaintiff also used numerous social media sites to promote and sell its products, had its own website, and exhibited its designs at multiple art galleries. *Id.* at *1-3.

[10] Nor could they do so within the confines of Rule 11.

555 and the other above-referenced authorities, Plaintiffs are required to state a claim for relief that is plausible on its face, with sufficient factual allegations "above the speculative level." This is not it.

## IV.  CONCLUSION

Like the many other cases before it which have been dismissed on the pleadings after the court compared the works at issue, Plaintiffs' claim here is:

> premised partly upon a wholly erroneous understanding of the extent of copyright protection; and partly upon that obsessive conviction, so frequent among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism.

*Litchfield*, 736 F.2d at 1358 (quoting *Dellar v. Samuel Goldwyn*, 150 F.2d 612, 613 (2d Cir. 1945)).

Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint, with prejudice.

Dated: April 20, 2018

Respectfully submitted,

*/s/ Brian A. Sher*
BRYAN CAVE LEIGHTON PAISNER LLP
161 N Clark Street, Ste 4300
Chicago, IL 60601
Telephone: (312) 602-5000
Facsimile: (312) 602-5050

Lee S. Brenner (admitted *pro hac*)
Ken D. Kronstadt (admitted *pro hac*)
KELLEY DRYE & WARREN LLP
10100 Santa Monica Blvd., 23rd Floor
Los Angeles, CA 90067
Telephone: (310) 712-6100
Facsimile: (310) 712-6199

*Attorneys for Defendants CBS Broadcasting Inc., Turner Broadcasting Systems, Gregory T. Garcia and Alix Jaffe*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 20, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

*/s/ Brian A. Sher*
Brian A. Sher