**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DIANA MEYNART-HANZEL,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Case No. 17 C 6308** |
| **TURNER BROADCASTING SYSTEM,** *et al.,* | **Judge Harry D. Leinenweber** |
| **Defendants.** | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Diana Meynart-Hanzel and Michael David Slowik ("Plaintiffs") bring a copyright infringement suit against Defendants Turner Broadcasting System, Inc., CBS Broadcasting, Inc., Gregory T. Garcia, Alix Jaffe, and Does 1-10 ("Defendants"). Pursuant to the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.,* Plaintiffs allege Defendants conspired to steal their copyrighted property by producing and distributing an episodic television program allegedly very similar to one of their own. Before the Court are two separate Motions to Dismiss. Defendants Garcia and Jaffe move to dismiss for lack of personal jurisdiction. (ECF No. 24.) All Defendants move to dismiss for failure to state a claim. (ECF No. 27.) For the reasons stated herein, both of Defendants' Motions are granted.

**I. STATEMENT**

This case arises out of the creation and production of an episodic television program called "The Guest Book If These Walls Could Talk" ("The Guest Book"). (Compl. ¶ 2, Dkt. No. 1.) Plaintiffs claim that

Defendants stole their copyrighted property—an allegedly similar, or nearly identical, program called "B&B If These Walls Could Talk" ("B&B"). B&B tells a fictional story of a Bed & Breakfast owner who opened the rental residence in memory of her recently deceased husband. (Compl. ¶ 1.) Plaintiffs describe the program as a "light-hearted approach to character-driven comedy and drama arising from provocative and sometimes explosive situations created by bringing an ever-changing array of people together in this intimate, vacation setting." (Compl. ¶ 1.) Plaintiffs list three components that comprise the program: (1) B&B Treatment & Characters ("Treatment"), which the Court understands to be a catalogue of potential characters and plot developments; (2) B&B Sizzle Reel video (the "Sizzle Reel"), a one minute and twenty second video containing short scenes envisioned for B&B; and (3) B&B Bible ("Bible"), which the Court understands to be a document containing characters, settings, and other elements (collectively "B&B"). (Compl. ¶ 1.) Most important to the instant litigation, Plaintiffs allegedly own a valid, registered copyright in the Treatment and a valid, unregistered copyright in the Sizzle Reel and Bible. (Compl. ¶¶ 18-20.)

Plaintiffs conceived of the "concepts, ideas, plots, themes, dialogue, mood, setting, and characters" for B&B on June 15, 2012. (Compl. ¶ 22.) On June 18, 2012, Plaintiffs created a thirty second video "trailer" to disseminate and use to pitch the series to third parties. (Compl. ¶ 23.) Plaintiffs also filmed interviews of B&B's main cast and the Sizzle Reel, which were published on YouTube on October 5, 2013 and Dec. 3, 2013, respectively. (Compl. ¶ 19.) They subsequently used these materials to pitch B&B to several individuals

and companies, many of whom failed to respond. (Compl. ¶¶ 27-32.) The "Fade in Magazine Pitch Fest" in Los Angeles, California was one forum at which Plaintiffs pitched their idea for B&B. (Compl. ¶ 29). On November 25, 2015, Plaintiffs' contacted a Mr. Lee Levinson for his assistance in finding a showrunner. (Compl. ¶ 30.) They showed him the B&B Treatment, Sizzle Reel, and Bible, and sought his feedback on the works. (Compl. ¶ 31.) Several months later, on June 17, 2017, Plaintiffs terminated the relationship with Mr. Levinson due to his refusal to have third parties sign nondisclosure agreements concerning B&B materials. (Compl. ¶ 32.)

Plaintiffs contend that Defendants accessed their work through several means. First, Plaintiffs allege that Mr. Levinson shared the idea for B&B with "agents and employees of Defendants through his professional relationships in the television and motion picture industry." (Compl. ¶ 33.) Second, Plaintiffs claim that Defendants accessed and viewed the Sizzle Reel on YouTube. (Compl. ¶ 34.) Third, Plaintiffs assert that Defendants had access to B&B through Plaintiffs' participation in the "Fade in Magazine Pitch Fest," where they pitched B&B to about ten companies. (Comp. ¶¶ 29, 35.)

Moreover, Plaintiffs contend that substantial similarities exist between The Guest Book and B&B, especially between their "concepts, ideas, plots, themes, characters, dialogue, mood, pace, and scenes[.]" (Compl. ¶ 36). Specifically, Plaintiffs' Complaint provides the following factual allegations:

- Both works contain the title "If These Walls Could Talk." (Compl. ¶ 36(a).)

- 3 -

- Both works take place in a "charming, elegant and cozy, yet secluded vacation rental residence" and use a visual depiction of the rental at the start of each episode. (Compl. ¶ 36(b), (d).) The visual depiction for B&B is a cartoon-like drawing that portrays a wooden building set in the woods with a railing front porch, dormer windows, and a chimney. (Compl. ¶ 36(e).) The Defendants allegedly use the real-life version of the building in The Guest Book. (Compl. ¶ 36(f).)

- Both works portray a "vivacious and spontaneous" female protagonist who opens the rental residence in memory of her deceased husband. (Compl. ¶ 36(g)-(h).)

- Both works portray new "guests" that arrive at the rental residence each week. (Compl. ¶ 36(k).) The plot for both works revolves around the comedic interactions of these guests. (*Id.*)

- In B&B's first episode, a female guest appears with her family and faces a personal conflict dealing with children and issues of loyalty. (Compl. ¶ 36(l).) To drive the plot of the guest's struggle, the Treatment provides a list of potential "guests" for her to interact with, including an "atheist." (*Id.*) The Guest Book also utilizes an "atheist" to bolster allegedly a similar "conflict-of-loyalty theme." (*Id.*)

- Both works feature other prominent characters that are allegedly "portrayed in identical appearance and arrangement," including wardrobe, hairstyle, and "old-man" eyeglasses. (Compl. ¶ 36(m)-(n).)

- Both works contain a scene where an individual is filmed from behind, looking into the mirror, after having just gotten "high" on marijuana. (Comp. ¶ 36(o)-(q).) In these episodes, both works portray a guest using "pot" and display the word "brownies" in the opening scene. (Compl. ¶ 36(r).)

- Both works portray a story "involving sex, temptation and seduction of the male guest protagonist, ending in a scene where the male guest is made subservient to the female[.]" (Compl. ¶ 36(s).) Both works also involve a scene where the female is portrayed in an identical, seductive manner, laying on the bed in lingerie. (Compl. ¶ 36(t)-(u).)

- Both works contain an episode with a lead male guest struggles with obsessive-compulsive disorder, leading to comical interactions with other guests. (Compl. ¶ 36(v).)

- Both works portray "an unlikely and comical dance scene involving the guests inside the main room of the vacation rental." (Compl. ¶ 36(w).)

Plaintiffs contend the "only explanation for such striking similarity is the Defendants' unauthorized, wholesale theft of [their work] and creation of an episodic television program that is entirely copied from and derivative of [their] protected creative authorship." (Compl. ¶ 4.)

As such, on August 31, 2017, Plaintiffs filed this lawsuit pursuant to the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.,* alleging that Defendants willfully infringed Plaintiffs' registered and unregistered copyrights. (Compl. ¶ 1.)

## II.  DISCUSSION

Defendants Garcia and Jaffe move to dismiss under 12(b)(2), contending the Court lacks personal jurisdiction over them. FED. R. CIV. P. 12(b)(2).  All Defendants move to dismiss under 12(b)(6), contending Plaintiffs fail to state a valid claim of copyright infringement. FED. R. CIV. P. 12(b)(6).  Finally, Defendants request that the Court take judicial notice of certain common elements prevalent in other published creative works not at bar.  For the reasons stated herein, the Court grants both the 12(b)(2) and 12(b)(6) Motions to Dismiss and denies Defendants' request for judicial notice.

### A.  Jurisdiction Over Defendants Garcia and Jaffe

Defendants Garcia and Jaffe move to dismiss Plaintiffs' claim for lack of jurisdiction.  With a 12(b)(2) motion to dismiss, the plaintiff bears the burden of proving that jurisdiction exists.  FED. R. CIV. P. 12(b)(2).  Generally, to survive a motion to dismiss, the plaintiff "need only make out a *prima facia* case of personal jurisdiction." *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations omitted).  However, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783.

Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state.  FED. R. CIV. P. 4(k)(1)(A); *see also Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008).  The Illinois long-arm statute

permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause.   735 ILCS 5/2-209(c).  So, here, the statutory and federal constitutional inquiries merge.  *See Citadel Grp. Ltd.*, 536 F.3d at 761.  This Court must consider whether Defendants have sufficient "minimum contacts" with Illinois such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

### 1.   *General Jurisdiction*

Plaintiffs argue that both general and specific personal jurisdiction exist over Defendants.  The Court turns first to general jurisdiction.  General jurisdiction arises when a defendant has "continuous and systematic" contacts with a state. *Tamburo v. Dworkin*, 601 F.3d 693, 700-01 (7th Cir. 2010) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701 (citing *Purdue Res. Found.,* 338 F.3d at 787 n.16).  Occasional visits to the forum state are insufficient. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

The Court finds no basis for general jurisdiction.  Though Plaintiffs allege that Defendants have "continuous and systematic" contacts with Illinois, Plaintiffs fail to specify any facts supporting this proposition as to Defendants Garcia and Jaffe in either the Complaint or Plaintiffs' response brief.  Defendants Garcia and Jaffe both reside in California, (Compl. ¶¶ 12, 13), and have little to no

contacts with Illinois.  Specifically, Defendant Jaffe has not visited Illinois for the past seventeen years and Defendant Garcia has been only twice in his life.  (Alix Jaffe Decl. ("AJ Decl.") ¶¶ 1, 6, Dkt. No. 25; Gregory Garcia Decl. ("GG Decl.") ¶¶ 1, 14, Dkt. No. 25.)  Moreover, Defendants do not conduct any business in Illinois, maintain property in Illinois, or have employees, agents, or assets of any kind in Illinois.  (*See generally* AJ Decl.; GG Decl.)  The Court therefore lacks general jurisdiction over Defendants.  *See Tamburo*, 601 F.3 at 701-02 (finding "sporadic contacts with Illinois do not approach the level of continuous and systematic contacts necessary to establish personal jurisdiction").

### 2.  *Specific Jurisdiction*

The Court next turns to specific jurisdiction.  To find specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice."  *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012) (citations omitted).

Courts in this district have held that a defendant "purposely directs its conduct at Illinois and reasonably should foresee being brought to court there when the defendant reaches into Illinois by infringing the intellectual property rights of a plaintiff 'at home' in the state, attempting to exploit the infringing conduct with knowledge that the plaintiff would be injured in Illinois."  *MG Design Assocs.,*

*Corp. v. Costar Realty Info. Inc.*, 224 F. Supp. 3d 621, 632 (N.D. Ill. 2016), *on reconsideration in part,* 267 F. Supp. 3d 1000 (N.D. Ill. 2017); *see also IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 800-01 (N.D. Ill. 2016) (finding specific jurisdiction where defendant infringed trademarks knowing that the plaintiff, which had its principal place of business in Illinois, would suffer in Illinois).

Though Plaintiffs begin auspiciously, they ultimately fail to show that Defendants "purposefully availed" themselves of the laws and protections of this forum. *Burger King Corp.*, 471 U.S. at 475. Plaintiffs allege that Defendants "engaged in intentional conduct with the purpose of causing harm to Plaintiff[s] in this District." (Compl. ¶ 8, Dkt. No. 1.)  To support this allegation, the Plaintiffs assert that "[t]he only explanation for [the] striking similarit[ies between the two series] is the Defendants' unauthorized, wholesale theft of [B&B] and creation of an episodic television program that is entirely copied from and derivative of Plaintiffs' protected creative authorship." (Compl. ¶ 8.)  In other words, Plaintiffs argue that the mere existence of The Guest Book demonstrates, in and of itself, that Defendants intentionally copied B&B knowing that it would cause Plaintiffs harm in this state.  Although their support for the initial proposition is speculative and quite arbitrary, on its face, the Complaint sufficiently pleads jurisdiction over Defendants Garcia and Jaffe.

To any extent, Defendants Garcia and Jaffe both submit declarations, and Defendant Garcia submits time-stamped email correspondence, which they believe negate any claim of willful copyright infringement by attesting to their lack of any jurisdictional contact

with Illinois. In those declarations, Garcia and Jaffe assert that they have never had any communications with Plaintiffs and never heard of B&B prior to the lawsuit. (GG Decl. ¶¶ 7-13; AJ Decl. ¶¶ 11-17.) Moreover, the time-stamped email correspondence Garcia provides demonstrate that Garcia drafted several plotlines for The Guest Book television program one year prior to Plaintiffs' conception of B&B. (*See generally* GG Decl.) The Court thus cannot accept Plaintiffs' allegations in their Complaint as the sole basis for jurisdiction. *See Scherr v. Abrahams*, No. 97-cv-5453, 1998 WL 299678, at *2 (N.D. Ill. May 29, 1998) (citing *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) in support of proposition that "[t]he allegations in plaintiff's complaint are to be taken as true unless controverted by the defendants' affidavits").

Because Defendants have submitted evidence in opposition to the Court's exercise of jurisdiction, Plaintiffs must "go beyond the pleadings" and submit affirmative evidence to support their claim of jurisdiction. *See Purdue Research Found.*, 338 F.3d at 783. Plaintiffs, however, fail to acknowledge the evidence put forth in Defendants' Motion to Dismiss. They also offer no affirmative evidence supporting the exercise of jurisdiction. *Kennelsource, Inc. v. Barking Hound Vill.*, *LLC,* No. 05-cv-1788, 2006 WL 2578975, at *3 n.4 (N.D. Ill. Sept. 5, 2006) (finding plaintiff lacked personal jurisdiction when it failed to rebut factual allegations in defendants' affidavits). Instead, Plaintiffs' response asserts once more without additional supporting jurisdictional evidence that Defendants intentionally copied B&B. *See Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 735 (N.D. Ill. 2017) (finding that to "make a prima facie showing of personal jurisdiction, [the plaintiff]

must do more than make unsupported statements that controvert [the defendant's] sworn affidavit"); *see also Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1016 n.6 (N.D. Ill. 2009) (finding that "[w]here factual assertions amount only to vague generalizations or unsupported allegations, they are not enough to support personal jurisdiction"). For the foregoing reasons, the Court lacks specific jurisdiction. *See Mohammed*, 237 F.Supp.3d at 734 (dismissing defendant for lack of personal jurisdiction when plaintiff failed to rebut defendant's sworn statements that he resided in California and seldomly traveled to Illinois, he never lived, worked, or maintained an office in Illinois, and never corresponded with plaintiff in any way). Therefore, Plaintiffs fail to show sufficient minimum contacts with Illinois to establish jurisdiction.

Plaintiffs fail to show that the Court has either general or specific personal jurisdiction over Defendants Garcia and Jaffe. Accordingly, the Court grants Garcia and Jaffe's joint 12(b)(2) Motion to Dismiss.

### B. Copyright Infringement

Garcia, Jaffe and all other Defendants also join in a 12(b)(6) motion, contending that because Plaintiffs' copyright infringement allegations fail to state a viable claim, the Court lacks subject matter jurisdiction. A 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Federal notice pleading standards provide: "A plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide

- 11 -

the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted); *see also* FED. R. CIV. P. 8(a)(2). When considering a 12(b)(6) motion to dismiss, the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

Moreover, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must plead facts allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* Accordingly, "[t]hreshold recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, the plausibility standard asks for only a sheer possibility that defendant acted unlawfully. *Id.*

To establish a claim for copyright infringement, the plaintiff must show: (1) "ownership of a valid copyright," and (2) that defendants "cop[ied] constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). In a copyright infringement case, a court may dismiss pursuant to 12(b)(6) when a plaintiff's complaint fails to establish substantial similarities between the works in question. *Fooey Inc. v. Gap, Inc.*, No. 12-c-5713, 2013 WL 2237515, at *1 (N.D. Ill. May 17, 2013) (granting a 12(b)(6) motion because "no ordinary observer comparing the two [works] could

- 12 -

reasonably conclude that defendant misappropriated plaintiff's protectable expression").

Here, the Court recognizes, and neither party disputes, that Plaintiffs are the owners of a valid copyright. (Compl. ¶¶ 18-20.) The subsequent analysis will thus focus on whether Plaintiffs have pled sufficient facts to establish Defendants "copied" elements of B&B to withstand a motion to dismiss. A court can infer copying "where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *JCW Invs., Inc.*, 482 F.3d at 915 (quoting *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001)). For the reasons stated below, the Court finds that Plaintiffs' allegations fail to state the requisite access and substantial similarity between The Guest Book and B&B to raise a viable copyright claim.

### 1. *Access*

"As a threshold matter," a plaintiff must prove access through "evidence which would establish a reasonable possibility that the accused work was available to the alleged infringer." *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984). Moreover, "a defendant's opportunity to view the copyrighted work must exist by a reasonable possibility—not a bare possibility." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02 [A] (2013). A plaintiff may "plausibly plead access to the copyrighted work with facts alleging that the defendant had the opportunity to view the protected item." *Peters v. West*, 776 F. Supp. 2d 742, 748 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) (citing *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 n.5

- 13 -

(7th Cir. 1994)). Additionally, "a plaintiff may satisfy the requirement by showing that the copyrighted work was so widely disseminated that the defendant can be presumed to have seen or heard it." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017); *see e.g.*, *Cholvin v. B. & F. Music Co.*, 253 F.2d 102, 103-04 (7th Cir. 1958) (finding access where plaintiffs distributed about 2000 copies of sheet music, sold more than 200,000 records, and the song was broadcast nationwide for years).

Here, Plaintiffs allege that "[o]n information and belief" Defendants accessed their work through the following: Mr. Levinson "shared the idea" of B&B with "agents and employees of Defendants through his professional relationships in the television and motion picture industry;" Defendants accessed and viewed the Sizzle Reel on YouTube; and Defendants accessed the B&B Series from Plaintiffs' participation in the "Fade in Magazine Pitch Fest." (Compl. ¶¶ 33-35.) As an initial matter, the bald allegation that Mr. Levinson "shared the idea" with Defendants' agents is devoid of any facts to support the inference that Defendants accessed Plaintiffs' work. Plaintiffs also allege no facts to support the conclusion that Mr. Levinson and Defendants maintain any relationship, other than that they work in the same industry. Moreover, the mere fact that Plaintiffs placed the Sizzle Reel on YouTube does not, without more, imply broad dissemination. Notably, absent from the Complaint are any facts concerning the alleged breadth of that distribution (*e.g.*, the number of views, subscribers, traffic, etc.). *See O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008) ("[T]he mere fact that [plaintiff's] work was posted on

the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination"). Finally, Plaintiffs assert yet another conclusory statement and state no facts to support that Defendants accessed their work in the "Fade in Magazine Pitch Fest." Without more, the Complaint fails to make factual allegations from which the Court may plausibly infer that Defendants accessed Plaintiffs' copyrighted works. For the foregoing reasons, the Court finds that Plaintiffs' Complaint fails to plead sufficiently access for a claim of copyright infringement. While this shortcoming alone defeats the claim, the Court finds an additional basis to dismiss the claim.

### 2. *Substantial Similarity*

Plaintiffs also fail to allege facts sufficient to show that The Guest Book and B&B are substantially similar. In determining whether the two works are substantially similar, the Court must consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (citation omitted). In other words, the inquiry is whether "the two works share enough unique features to give rise to a breach of the duty not to copy another's work." *Peters v. West*, 692 F.3d 629, 663-64 (7th Cir. 2012). Additionally, "[w]hen considering substantial similarity, it is essential to focus on protectable expression." *Design Basics*, 858 F.3d at 1101. The doctrine of scènes à faire excludes from protection "incidents, characters or settings which are as a practical matter indispensable, or at least

standard, in the treatment of a given 'topic' in audio visual works." *Incredible Techs.*, 400 F.3d at 1012.

Plaintiffs contend that they have alleged sufficient facts from which the Court, conducting a side-by-side comparison, can discern substantial similarity. Specifically, Plaintiffs allege "substantial similarities in concepts, ideas, plots, themes, characters, dialogue, mood, pace, and scenes[.]" (Compl. 36.) As earlier described, Plaintiffs' Complaint provides a list of alleged similarities between The Guest Book and B&B.

The Court first considers certain elements and features of creative works that are excluded from protection. *See Incredible Techs.*, 400 F.3d at 1012. "[A] copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so *rudimentary, commonplace, standard,* or *unavoidable* that they do not serve to distinguish one work within a class of works from another." *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 929 (7th Cir. 2003) (emphasis added). Turning to the underlying plot, Plaintiffs allege both works contain new guests that arrive to the residence each week and the story line revolves around the guests interacting with each other. An episodic television program that takes place in a rental residence most likely revolves around the guests' interactions. Such interactions are unavoidable and an indispensable element to this type of setting. It is therefore too commonplace and general to be protected. *See Wavelength Film Co. v. Columbia Pictures Indus.*, 631 F. Supp. 305, 307 (N.D. Ill. 1986) (finding plaintiff's underlying plot of "an alien trying to return home [being] pursued by hostile governmental authorities

and rescued by friendly humans" was an "indispensable element to the treatment of this type of science fiction theme and are, as a matter of law, simply too general to be protectible").

Turning to the setting, Plaintiffs allege that both works depict stories that take place in visually similar "charming, elegant and cozy, yet secluded vacation rental residence." (Compl. ¶ 36(b)-(f).) The side-by-side comparison Plaintiffs present show two buildings with railing front porches, dormer windows, and chimneys, and both are situated somewhere in the woods. The Court fails to see how the building used in Defendants' work is the "equivalent" to a cartoon, filled with depictions of cartoon characters. (Compl. ¶ 36(e)-(f).) The building itself is one that is commonplace in any audio-visual taking place in or near the woods. Moreover, the mere fact that both works take place at a vacation rental, alone, is commonplace and too general to be protected. *See Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 446-47 (S.D.N.Y. 2011), *aff'd sub nom*, *Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012) (finding that a setting involving pyramid and archeological excavation settings in Antarctica are "far too general to be the basis of a copyright infringement action"). Finally, characterizing the residence as "charming, elegant and cozy" is overly broad and vague, failing to differentiate the rental residences of both works from any other similarly-situated creative production.

The Court reaches a similar conclusion for the allegedly similar characters. The Plaintiffs allege that in both works, the female protagonists, "identical in appearance and manner," appear as "vivacious and spontaneous" "buxom brunette[s]" who decide to open rental residences

in memory of their deceased husbands. (Compl. ¶ 36(g)-(i).) Plaintiffs also allege that "the central guest characters are portrayed in identical appearance and arrangement." (Compl. ¶ 36(m).) Nonetheless, copyright law does not protect basic or stock character types. *Gaiman v. McFarlane*, 360 F.3d 644, 659-60 (7th Cir. 2004); *see also Alexander v. Murdoch*, No. 10-cv-5613, 2011 WL 2802923, at *5 (S.D.N.Y. July 14, 2011), *aff'd,* 502 F. App'x 107 (2d Cir. 2012), *as amended* (Nov. 16, 2012) (holding that "stunningly beautiful, fiery, temperamental, Latin mother, with a thick accent, who's in love with her Caucasian [ex-husband/husband] and always makes him do the right thing, especially where her son is concerned . . . is a stock character and therefore not copyrightable"). Although the protagonist's motivation for opening the rental residence is unique, Plaintiffs' description of the protagonist and side-by-side photographic comparisons, (Compl. ¶ 36(i)), offer little creativity that is not already commonplace. Scenes of women in lingerie and characters being filmed from behind, looking into the mirror, are also indispensable in audio-visuals generally. The Court thus concludes that Plaintiffs have failed to show such characters are protected copyright.

The alleged themes for B&B also do not rise to protected copyright. Plaintiffs complain that The Guest Book and B&B have the same phrase in their title: "If These Walls Could Talk." But titles are not copyrightable. *See Peters*, 776 F. Supp. 2d at 749; *see also* 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles, and slogans" cannot be copyrighted). Plaintiffs' complaint also describes an episode where a female guest with children struggles with issues of loyalty.

The B&B Treatment provides a list of potential characters to interact with the female to develop a "conflict-of-loyalty theme," one character being an "atheist." (Compl. ¶ 36(l).) Plaintiffs allege that Defendants copied this theme by utilizing an atheist character "to create the identical portrayal of the dramatic conflict." (*Id.*) Again, Plaintiffs miss the mark; commonplace themes are too general to be protected. *See, e.g.*, *Warner Bros. v. Am. Broad. Cos., Inc.*, 654 F.2d 204, 209 (2d. Cir. 1981) (recognizing that "heroes perform[ing] feats of miraculous strength . . . [are] too common and general a characteristic or theme to even approach the degree of concreteness and particularity deserving copyright protection"). The theme "conflict-of-loyalty," as well as other alleged copyrighted themes including "sex" and "drugs" are too common in this day and age to be copyrighted. Plaintiffs also fail to allege any concrete or particular facts demonstrating that such themes are unique in this instance. The Court thus finds the alleged themes are not protected.

Copyright protects those elements of a work that "possess originality," with originality "requir[ing] that the elements be independently created and possess at least some minimal degree of creativity." *Nova Design Build, Inc. v. Grace Hotels LLC*, 652 F.3d 814, 818 (7th Cir. 2011). Moreover, it is "only the *form* of an author's expression [that] is protectable, not the facts or ideas being expressed." *Sissom v. Snow*, 626 F. App'x 163, 166 (7th Cir. 2015). "When an idea is capable of very few expressions, the idea and its expression 'merge' and the expression may not be copyrighted." *Culver Franchising Sys., Inc. v. Steak N Shake Inc.*, No. 16-c-71, 2016 WL

4158957, at *4 (N.D. Ill. Aug. 5, 2016) (citing *Seng Tiong Ho v. Taflove*, 648 F.3d 489, 497 (7th Cir. 2011)).  While it is apparent that The Guest Book and B&B do contain similarities, these similarities are not ones Plaintiffs have demonstrated to be substantial and protected.  Any alleged similarities aside, the two works are also vastly different. *See Gilbert v. New Line Prods, Inc.*, No. 09-cv-2231, 2009 WL 7422458, at *3-5 (C.D. Cal. Nov. 16, 2009), *on reconsideration in part*, No. 09-cv-2231, 2010 WL 891333 (C.D. Cal. Feb. 17, 2010), *aff'd*, 490 F. App'x 34 (9th Cir. 2012) (granting 12(b)(6) for an allegedly infringing movie that contained generic similarities, but "paled . . . in comparison to vast differences in characters, plot, mood, and themes between the two works").  As demonstrated above, Plaintiffs fail to plead *substantial* similarities between B&B and The Guest Book that rise to the level of *plausible* copyright infringement.  For the foregoing reasons, the Court finds that Plaintiffs have failed to state a viable claim of copyright infringement, and thus, dismisses the claim.

### C.  Judicial Notice

As an aside, the Court considers Plaintiffs' objection to judicial notice.  Defendants requested the Court take judicial notice of generic elements prevalent in other published creative works, similar to The Guest Book and B&B.  Generally, a court may not consider matters outside the pleadings when determining a motion to dismiss without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d).  There are several exceptions to this rule, *see Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (describing an exception for "matters of public record"); however, the Court need

not address them here.  The Court need not and does not rely on Defendants' additional materials in ruling in their favor.  Accordingly, the request for judicial notice is denied.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Court lacks personal jurisdiction over Defendants Garcia and Jaffe, thus Defendants' 12(b)(2) Motion to Dismiss is granted.  The Plaintiffs have also failed to state a viable copyright claim for which relief may be granted.  Therefore, Defendants' 12(b)(6) Motion to Dismiss is granted as well.  Accordingly, the case is dismissed without prejudice.  Plaintiffs are granted leave to file an Amended Complaint by October 1, 2018.  Failure to do so will result in dismissal with prejudice.

**IT IS SO ORDERED.**

_____

Harry D. Leinenweber, Judge
United States District Court

Dated:  9/18/2018